COMMONWEALTH INVESTMENT CO. *vs.* FELLSWAY MOTOR
MART, INC.

Suffolk. February 7, 1936. — April 13, 1936.

Present RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Contract*, Modification, Consideration. *Landlord and Tenant*, Modification of lease.

The rent to be paid under a lease in writing of real property may be varied during the term by an oral contract of the parties.

A promise made by a lessee during the term, to remain as tenant in actual occupancy of the premises, was consideration for the lessor's oral promise to reduce the rent payable by the terms of the lease.

CONTRACT. Writ in the Superior Court dated May 5, 1934.

The action was heard by *O'Connell*, J., without a jury. There was a finding for the defendant. The plaintiff alleged exceptions.

*N. A. Heller*, (*D. C. Sachs* with him,) for the plaintiff.

*W. H. McLaughlin*, (*C. S. McLaughlin* with him,) for the defendant.

PIERCE, J. This is an action of contract to recover rent under a lease.

The declaration alleges that "the defendant owes . . . [the plaintiff] the sum of . . . $3,400 for rent of certain stores, bays and basement held by the defendant of the plaintiff, and interest." The declaration has a bill of particulars annexed.* The answer of the defendant is a general denial, payment and a special answer "that after the delivery of the lease referred to in the plaintiff's declaration, the plaintiff and the defendant entered into a subsequent oral agreement made on sufficient consideration, under the terms of which the rent reserved in the lease hereinbefore referred to was reduced for the remainder of the term, to

---

* The bill of particulars set forth a claim for rent through March 31, 1934. — REPORTER.

$400 per month"; that the defendant "paid the rent so reserved pursuant to the terms of said agreement from November, 1932, to April, 1934, and that the plaintiff accepted said payments as the rent reserved under said original agreement."

It is not disputed that the plaintiff was the owner of the premises; that a lease thereof dated May 27, 1932, was duly executed by the plaintiff as lessor and by the defendant as lessee; that the defendant occupied the premises under said lease from the commencement of the term, July 1, 1932, to May 5, 1934; that the lease was for a term of two years commencing July 1, 1932, at a monthly rental of $600; that the defendant's business was the sale of automobiles and automobile accessories; that the defendant paid the plaintiff the rent reserved of $600 each month for the months of July, August, September and October, 1932; that a witness, Edward Watchmaker, had been treasurer, clerk and director of the plaintiff corporation continuously from its organization in 1919 to the date of the writ; that Frank H. Baer had been president and director of the plaintiff corporation from the date of its organization to the date of the writ; that William F. Smith became president of the defendant corporation on or about July 1, 1931; that prior to July 1, 1931, Louis Anacone had been its treasurer; and that commencing July 1, 1931, Benjamin Kamm became and served continuously as the treasurer of the defendant to the time of the trial in this action. No question is raised but that the several officers of the plaintiff and defendant corporations had authority to act in the premises for their corporations. It is also not disputed that a conference was held between Watchmaker (treasurer of the plaintiff), one Rudnick (a director of the plaintiff) and Smith and Kamm, president and treasurer respectively of the defendant corporation, relative to rent for November, 1932, and following months.

At the hearing in the Superior Court Watchmaker testified, in substance, that the president and the treasurer of the defendant corporation were present at the conference in its behalf; that they wanted a reduction in rent; and that

it was finally agreed that the defendant corporation should pay $400 a month rent; that the payment of the full rent of $600 should be resumed beginning April 1, 1933; and that the $200 a month suspension of rent should be made up beginning with the month of April, 1933, and over the period from April 1, 1933, to December 31, 1933.

The plaintiff's director, Rudnick, testified in substance as follows: Smith and Kamm were present at the conference in behalf of the defendant and he and Watchmaker were present in behalf of the plaintiff. Kamm said they wanted to get some help by way of having their rent reduced until the following spring, and Rudnick told them that a reduction in rent would be out of the question. Kamm and Smith said they needed help, at least until the next Spring and that they would be unable to pay more than $300 a month until then, and if the plaintiff would accept less rent they (the corporation) would make it up the next Spring. In reply Rudnick said that the proposed reduction would be out of the question, but he would reduce the rent to $500 a month if that would help them, further saying that the plaintiff corporation needed the rent money to pay the expenses of the building, interest and taxes. After the $500 offer he and Watchmaker left the room and after consultation returned and informed Kamm and Smith that the plaintiff would accept $450 a month until April provided the balance was paid up in April. Kamm and Smith replied that it was not enough, that they wanted a larger "cut" for a few months and that they would make up the "cut" in the Spring. Rudnick and Watchmaker stepped out into the hall for another conference, returned and told Kamm and Smith that the plaintiff would accept $400 a month until April 1, and that then the defendant would have to pay $600 a month and make up the arrears of $200 a month during the summer. Kamm and Smith said they wanted to stretch to December the period during which the arrears were to be paid and Rudnick and Watchmaker agreed to that. Kamm and Smith then suggested that Rudnick should give them a memorandum of the understanding so they would be assured of no change before spring. Rudnick informed

them that he could not give them a memorandum until the following week. In the following week he prepared a memorandum dated November 29, 1932, had it signed by his associates, Watchmaker the treasurer and Baer the president, had the corporate seal placed on it, and had annexed to it a certificate of vote of the corporation. In a few days he delivered the memorandum to Smith, and Smith said he would look at it and sign it in a day or two. The memorandum was never signed by Kamm, Smith or the defendant. It was alleged, when the memorandum was demanded by Rudnick, that it had been mislaid. It was, however, produced at the trial by the defendant's attorney on the demand of the plaintiff's attorney and sets out in substance the agreement as stated by Rudnick. Rudnick and Watchmaker were the only witnesses for the plaintiff who were present at the conference.

The defendant, at the close of the plaintiff's case, called its president, William F. Smith. He testified as to what happened at the conference in substance as follows: The conference was had in October between Watchmaker, Rudnick and himself. He told Rudnick and Watchmaker that "owing to business conditions unless . . . [the defendant] had a set reduction in rent . . . [it] would be forced to move on the first of the following month," and that business conditions were so poor that it was utterly impossible for the defendant to stay in the building at the existing rental because it had already lost several thousand dollars; that Rudnick then said, "Well, move, we don't want you to do that, we can't pay taxes on an empty building"; that Rudnick and Watchmaker then asked the witness what he thought the defendant could pay and the witness said $300, to which Rudnick said, "Ridiculous"; that Rudnick and Watchmaker left the room and when they came back Rudnick said, "Well, we will make it $500 a month," and Smith said, "That leaves us in the same position we were previous because it isn't enough to do us any good"; that Rudnick asked what the defendant could pay and Smith said $350; that Rudnick and Watchmaker again left the room and after the second conference they came

back and Rudnick said, "Well, make it four hundred," and Smith said the defendant would try it but "I don't know as we can continue, but it sounds fair and we will do the best we can"; that Rudnick and Watchmaker then said, "If we would carry on at a rental of $400 and if at some future date conditions warranted that we would sit down and talk over readjustment of rent"; that Smith in reply said "the books of the company were always open and their auditor could have the privilege to come in and look at them and if the conditions were such that the rent should be more why we were perfectly willing to talk"; that he said to Rudnick, "Do we need a new lease?" and Rudnick said, "No, the lease remains the same other than the fact the rent is changed," and Smith said, "I don't know anything about that. I am an automobile dealer and you are a real estate man, and I will leave that to you." Smith further testified, in substance, that Rudnick came to his place of business with a memorandum dated November 29, 1932, which he asked the witness to sign; that he read it and told Rudnick "that by signing it he would be right back in the same position that he had been previous to the verbal agreement, [and] he could not see any sense in signing it because it would break the agreement that they had made two weeks ago, it would mean that the defendant would have to pay up the rent called for by the original lease at times that the plaintiff saw fit to collect it, and that had been eliminated by the verbal agreement"; that Rudnick replied, "Look it over and if it is all right sign it"; that Rudnick "called up [the defendant by telephone] in a couple of days and asked if the witness [Smith] was going to sign" it; that Smith said he declined to sign it on the ground that if he signed it the defendant would be back in exactly the same position; and that Rudnick laughed and said, "Well, forget it."

The importance of the memorandum, which is printed in full in the record and is there called an "Agreement," lies in the paragraphs which read: "In consideration of One (1) dollar and other valuable considerations, receipt whereof is hereby acknowledged, it is agreed that the Les-

sors will accept the monthly rental of $400 per month, on account of rent due for premises . . . for a period beginning with November 1, 1932 and ending April 1, 1933. It is hereby agreed by the Lessees that the balance due will be paid apportionately together with the regular monthly rental on or before December 31, 1933."

The record does not disclose any correspondence between the parties in reference to the signing of the agreement until August 15, 1933. From November, 1932, until April, 1934, the defendant each month paid $400 to the plaintiff, and each month the plaintiff sent a letter in acknowledgment of "the receipt of monthly payments of rent of $400 on account." On August 15, 1933, the plaintiff sent a letter which was received by the defendant; the material part of this letter reads: "This is to notify you that you are now in arrears for rent in the amount of $2000.00. While we were accepting your checks for less than your lease calls for on account of rent, the agreement was that you were to pay up the balance as soon as business picked up. I believe that we have waited long enough. Business has picked up to a certain extent and we now demand that you pay the balance outstanding. We are expecting quick action in the matter. We expect to hear from you on or before the 20th of this month." On August 17, 1933, the defendant replied as follows: "I have at hand your letter of August 15, 1933 and am at loss to understand it. In the first instance I don't owe any rent nor does my company. We have promptly and regularly paid it since our adjustment last November, when you agreed to reduce the rent to four hundred dollars a month. You have never been mailed checks for less than the monthly rental. Our checks have regularly been for the full four hundred dollars. We never made any agreement to pay any sum of money when business picked up and as a matter of fact business hasn't picked up anyway. I confess I don't understand what this letter of yours is about anyway and for this purpose I am going to restate the facts as I understand them. Last November we told you that we could no longer pay the rent and you offered to reduce it to $450 per month. We

refused and offered $400 per month. You agreed to take this. A little while later you sent out some forms of agreement signed by you to be signed by us. The agreements did not state what had been agreed upon by us earlier in November and for that reason as we told you we refused to execute the agreements. From that time to this you have accepted our checks endorsed by you each month for four hundred dollars in full for our rent. If there is any explanation of this two thousand dollar business I would like to have it. We don't feel we owe you anything." On August 21, 1933, the plaintiff wrote the defendant: "In reply to your letter of August 16th wherein you disclaim the fact that you owe overdue rent in the sum of $2000. for occupancy of premises at the above location, we wish to advise you that we have in no way altered the terms of your lease and the acceptance of $400 per month was to be applied on account of rent. It was understood that at such times as conditions improved the balance of $200. per month, dated from the first month that you began to pay $400, was to be paid in full. The contents of your letter has been carefully noted and is most ridiculous, as if you will refer to the monthly rent notices you can see that these bills have been rendered in the form of $600 per month and each and every month we have acknowledged by letter, receipt of $400 to be applied on account. It is quite apparent that your concern is trying to get away with something, but please be assured that we will bring this matter to a head immediately, as your concern has not appreciated the co-operation we extended to you. We absolutely refuse to continue on these basis any longer."

At the close of the evidence the plaintiff submitted eighteen requests for rulings. Of these nine were given and nine denied. The plaintiff alleges error in the judge's refusing to give requests "1. On all the evidence the plaintiff is entitled to recover the rent claimed in the declaration"; "11. On all the evidence the defendant has failed to prove valid consideration for the plaintiff's alleged promise to accept $400 per month in full satisfaction of the defendant's rental obligation specified in the lease dated May 27,

1932"; and "13. The defendant's promise to pay $400 per month, which was an amount less than that which the defendant was already obligated to pay under the lease dated May 27, 1932, was not sufficient consideration to support the plaintiff's alleged promise to accept said sum in · full satisfaction of the defendant's rental obligation specified in said lease." All other requests are deemed to be waived. The judge found for the defendant "Upon all the facts and the greater weight of the evidence," and "specifically" found "that the plaintiff failed to sustain the burden of establishing by the greater weight of the evidence, that the debt claimed was owed; furthermore that the oral agreement set up by the defendant in the third paragraph of its answer was the basis upon which the sum of $400 was paid monthly and accepted by the plaintiff as the agreed rental as consideration for the defendant continuing as a tenant, and the defendant sustained the burden of so establishing." The plaintiff duly excepted "to the ruling" that "the burden of establishing by the greater weight of the evidence, that the debt claimed was owed," was on the plaintiff.

It is plain that the evidence above stated warranted the finding that "the sum of $400 was paid monthly and accepted by the plaintiff as the agreed rental as consideration for the defendant continuing as a tenant, and the defendant sustained the burden of so establishing." It is plain also that the plaintiff's request "1. On all the evidence the plaintiff is entitled to recover the rent claimed in the declaration" was denied rightly. It is to be noted that the action seeks to recover a sum certain for rent due as shown by a "Bill of Particulars" annexed to the declaration. It follows that the burden of proof is upon the plaintiff to establish that the amount claimed in the declaration is the amount due to be paid by the defendant.

"It is . . . now well settled, that ordinarily a written contract, before breach, may be varied by a subsequent oral agreement, made on a sufficient consideration, as to the terms of it which are to be observed in the future. Such a subsequent oral agreement may enlarge the time of per-

formance, or may vary any other terms of the contract, or may waive and discharge it altogether." *Hastings* v. *Lovejoy*, 140 Mass. 261, 264. The above rule is applicable to written contracts, and under it a written lease, under seal, may be subsequently modified as to the amount of rent by an oral agreement. *Hastings* v. *Lovejoy*, 140 Mass. 261, 265, and cases cited. Upon the facts found the only remaining issue is one of law. Upon the facts found and the evidence which supports the finding, the oral agreement to reduce the rent is established. It is plain that, during the term, a lessee cannot terminate the lease without the landlord's assent. *Wall* v. *Hinds*, 4 Gray, 256, 267. But it is equally clear that there is nothing in the relation between the lessor and lessee which constitutes an obligation of the lessee to remain in actual occupancy of the leased premises. In the case at bar the judge found that "the sum of $400 was paid monthly and accepted by the plaintiff as the agreed rental as consideration for the defendant continuing as a tenant," and that the defendant sustained the burden of establishing "that the oral agreement set up by the defendant in the third paragraph of its answer was the basis" therefor. This finding of fact was supported by the testimony of the president of the defendant company "That owing to business conditions unless we had a set reduction in the rent we would be forced to move on the first of the following month"; and by the statement of the plaintiff's officer: "Well, move, we don't want you to do that. We can't pay taxes on an empty building." These statements of the parties to the oral agreement were a sufficient consideration to support a promise to reduce the rent, because the defendant, upon the reduction of the rent, became impliedly bound to remain in actual occupancy of the premises; and because the plaintiff could be found to have received a distinct advantage or benefit through the occupancy of its premises. *Doherty* v. *Doe*, 18 Colo. 456. *Raymond* v. *Krauskopf*, 87 Iowa, 602. *Ten Eyck* v. *Sleeper*, 65 Minn. 413. *Bowman* v. *Wright*, 65 Neb. 661. See *Torrey* v. *Adams*, 254 Mass. 22, 27; *Parrot* v. *Mexican Central Railway*, 207 Mass. 184, 194.

The finding of fact that "the plaintiff failed to sustain the burden of establishing by the greater weight of the evidence, that the debt claimed was owed" was not a ruling of law.  It cannot be pronounced erroneous in view of the fact that the judge found further "that the oral agreement set up by the defendant in the third paragraph of its answer was the basis upon which the sum of $400 was paid monthly and accepted by the plaintiff as the agreed rental as consideration for the defendant continuing as a tenant" and that "the defendant sustained the burden of so establishing."  See *Patterson* v. *Ciborowski*, 277 Mass. 260.  There was no error of law in making this finding.

We find no error in the refusal to give the plaintiff's requests argued in its brief.

*Exceptions overruled.*