NEW ENGLAND FACTORS, INC. *vs.* HARMAND E. GENSTIL &
another.

Suffolk.   May 7, 1947. — November 28, 1947.

Present: LUMMUS, DOLAN, RONAN, & SPALDING, JJ.

*Interest. Evidence*, Extrinsic affecting writings. *Contract*, What consti-
tutes, Assumption of liability of another. *Equity Pleading and Prac-
tice*, Master: findings; Decree.

In a suit in equity where an issue was whether the defendant was under
obligation to pay the plaintiff certain compensation in addition to the
amounts stated in notes and trust receipts which contained no men-
tion of such compensation, a conclusion of a master, that it was "the
intention of . . . [the] parties that compensation be paid to the
plaintiff . . . and that it was understood and agreed . . . that such
compensation should be at" a certain rate, must stand on an appeal
by the defendant from a decree ordering payment of such compensa-
tion, where the conclusion was not based solely on nor inconsistent with
reported subsidiary findings not showing when or in what circum-
stances the agreement for such compensation was made, and might
have been based on unreported evidence showing that the notes and
trust receipts did not constitute the entire contract between the
parties but were supplemented by the agreement for compensation
as part of the entire contract, or that the agreement for compensa-
tion was a valid modification of the contract contained in the notes
and trust receipts: no violation was shown of the rule of substantive
law that a contract in writing, intended to be complete in itself, can-
not be varied or added to by parol evidence of antecedent or con-
temporaneous negotiations.

Enforcement of an oral agreement by a borrower of money to pay the
lender "compensation" at a rate greater than six per cent per annum
was not precluded by G. L. (Ter. Ed.) c. 107, § 3, where the "com-
pensation" included both interest and genuine service charges and the
proportions thereof did not appear.

An oral agreement by a borrower of money to pay to the lender a certain
"bonus," which in fact was nothing more than mere compensation for
the loan, was unenforceable under G. L. (Ter. Ed.) c. 107, § 3, to
the extent that the "bonus" exceeded six per cent per annum.

An assumption by a corporation of liabilities to a certain creditor of a
former partnership, which had included one who organized the cor-
poration, was not shown by the mere facts that upon dissolution of
the partnership the organizer acquired its assets and assumed its lia-
bilities and thereupon organized the corporation, became its presi-
dent and treasurer and a director and owner of substantially all

its stock, and shortly thereafter, with the assent of the creditor, transferred all the former partnership assets to the corporation, following which the creditor transferred his account with the partnership into the name of the corporation and regularly sent to it periodic statements of the account.

It was unnecessary and improper to include, in a final decree in a suit in equity ordering the payment of a debt with interest and certain charges, a provision "reserving to the court the right to enter a decree hereafter recalculating the . . . [charges] and the amounts of interest."

BILL IN EQUITY, filed in the Superior Court on July 27, 1945.

The suit was heard by *Dillon*, J., on a master's report.

*A. L. Brown*, for the defendants.

*Lee M. Friedman*, (*I. H. Y. Muchnick* with him,) for the plaintiff.

SPALDING, J.   By this bill in equity the plaintiff seeks an accounting and the recovery of certain sums of money alleged to be due to it from the defendants.  The case was heard by a master under the usual rule, [1] and his report was confirmed by an interlocutory decree.  An interlocutory decree was also entered dismissing the bill as to two of the defendants, Fred Theise, 2d, and Russell Theise. [2]  The case comes here on the appeals of the defendants Harmand E. Genstil and Genstil Fabric Corporation (hereinafter called the defendants) from a final decree ordering them to pay certain sums to the plaintiff with interest.

Facts found by the master which are material to these appeals may be summarized as follows: The plaintiff is a Massachusetts corporation engaged principally in the business of factoring and lending money for business purposes. The defendants Fred Theise, 2d, and Russell Theise, as partners, were engaged in the fabric business in Boston under the name of Theise Brothers Co., and began to transact business with the plaintiff sometime in 1940.  In February, 1942, the defendant Harmand E. Genstil (hereinafter called Genstil) joined the firm of Theise Brothers Co. At that time the partnership owed the plaintiff nothing.

---

[1] See Rule 86 of the Superior Court (1932).

[2] The plaintiff did not appeal from this decree, and no question concerning it is raised by the plaintiff or by any of the defendants.

The new partnership, which continued to do business with the plaintiff, transacted it in three ways. In some transactions the partnership would borrow money from the plaintiff by pledging accounts receivable; in others the money borrowed would be secured by trust receipts; and sometimes the plaintiff would guarantee to the partnership's vendors the payment for certain merchandise which they had sold to the partnership, obtaining, as security, trust receipts for the merchandise thus acquired.

Just prior to October 1, 1943, the partnership owed the plaintiff the sum of $7,779.63, secured by accounts receivable. In addition, the plaintiff held several notes of the partnership in varying amounts "against trust receipts." On October 1, 1943, the plaintiff desired to merge these notes and trust receipts into one note and one trust receipt. Accordingly on that date a note in the sum of $34,086.39 payable to the plaintiff was executed by the partnership and delivered to the plaintiff. Accompanying the note, and as security therefor, was a trust receipt of the partnership covering certain merchandise listed thereon.

On November 5, 1943, the plaintiff made a further loan to the partnership in the sum of $4,493.55 which was evidenced by a note of the partnership and secured by its trust receipt covering certain merchandise. Neither this note nor the trust receipt executed in connection therewith, nor the note for $34,086.39 nor the trust receipt accompanying it contained any provision for compensation to be paid to the plaintiff with respect to these transactions. The master found, however, that it was "the intention of all parties that compensation be paid to the plaintiff in connection with such transactions and that it was understood and agreed . . . that such compensation should be at the rate of 1/30 of 1½% per day on all indebtedness outstanding from the partnership to the plaintiff from day to day." From time to time between October 1, 1943, and May 31, 1945, the plaintiff gave certain credits for repayments of principal made on account of the indebtedness discussed above. And during this period the plaintiff made charges on the account regularly at the rate of one and one half

per cent per month on the balance of principal due each month. [1]

The master found that on May 31, 1945, the defendant Genstil owed the plaintiff the sum of $20,838.50 with respect to the transactions described above. He also found that the partnership had agreed to pay to the plaintiff the sum of $10,000 as a commission or bonus for $80,000 loaned by the latter to the partnership to enable it to finance a sale of merchandise to Sears, Roebuck & Co. and that a balance of $6,400 remained unpaid. He further found that the plaintiff was entitled to $5,000 for legal expenses incurred in connection with the present litigation. (The facts relating to the last two items will be set forth more fully hereafter.) A final decree was entered ordering the defendants Genstil and Genstil Fabric Corporation to pay to the plaintiff the sum of $20,838.50 together with a service charge of one thirtieth of one and one half per cent of that amount for every day after June 1, 1945 (which at the time of the entry of the decree amounted to $5,949.39), plus $6,400 with interest in the amount of $548.27 from the date suit was commenced, plus $5,000, the aggregate of which amounts was $38,736.16, and "reserving to the court the right to enter a decree hereafter recalculating the service charge and the amounts of interest."

1. The defendants contend that they have been improperly charged with interest at the rate of one and one half per cent per month on the balances remaining unpaid on the notes for $34,086.39 and $4,493.55. They argue that since neither the notes nor the trust receipts contain any provision for the payment of interest none was payable. They also argue that even if the payment of interest was agreed upon it could not, in view of G. L. (Ter. Ed.) c. 107, § 3, be at a greater rate than six per cent per annum, inasmuch as the agreement to pay it was not in writing. In either case, it is contended, the amount which they have been ordered to pay to the plaintiff is excessive.

---

[1] There were a few charges made at the rate of one thirtieth of two per cent per day, but the master found that this was not intended by the parties and credit was given to the defendants for the difference between that rate and one and one half per cent. There is no controversy respecting this.

The "law neither imposes nor implies an obligation to pay interest from the moment of the creation of a debt . . . . Such a payment is in its essence a consideration for the use of money. That obligation must arise from special agreement of the parties." *Ratner* v. *Hill,* 270 Mass. 249, 253–254. *Daniels* v. *Briggs,* 279 Mass. 87, 93. But the master, as we have indicated, found that there was an agreement to pay compensation in connection with the various transactions at the rate charged. The defendants argue, however that such a finding does violence to the parol evidence rule, since neither the notes nor the trust receipts contained any provision relating to compensation either as service charges or as interest. But before that rule comes into operation "the court must be sure that it has before it a written contract intended by the parties as a statement of their complete agreement." *Kesslen Shoe Co. Inc.* v. *Philadelphia Fire & Marine Ins. Co.* 295 Mass. 123, 129. *Maybury Shoe Co.* v. *Izenstatt,* 320 Mass. 397, 403. Compare *Kerwin* v. *Donaghy,* 317 Mass. 559, 566–568. Nor is the rule applicable where the terms of a written agreement have been modified by subsequent oral agreement, made on a sufficient consideration. *Hastings* v. *Lovejoy,* 140 Mass. 261, 264, 265; *Commonwealth Investment Co.* v. *Fellsway Motor Mart, Inc.* 294 Mass. 306, 313–314; or by such a subsequent agreement implied by the conduct of the parties. *Winchester* v. *Glazier,* 152 Mass. 316, 325. And it "frequently has been held that an independent and collateral element of a contract may be shown by parol evidence, even though the rest of the contract is in writing." *Williams* v. *Pittsfield Lime & Stone Co.* 258 Mass. 65, 68. *Tompkins* v. *Sullivan,* 313 Mass. 459, 461.

Here the master's report contains no findings as to the precise time when the agreement to pay the charges in question occurred. Nor do the findings disclose the circumstances in which the agreement was made. The conclusion of the master that the parties agreed to the charges in question may well have been predicated on a prior or contemporaneous agreement of the parties found on all of the evidence (which is not reported) to have supplemented the notes

and trust receipts and to have formed part of the original complete agreement between the parties; or such conclusion may have been founded on a modification of the original agreement by a subsequent agreement.  We are bound by the master's ultimate finding on this issue unless there are subsidiary findings which vitiate it.  *Norton* v. *Chioda,* 317 Mass. 446, 450.  Such subsidiary findings as there are not only are not repugnant to the ultimate finding but, if anything, tend to support it.  These findings are that from October 1, 1943, to May 31, 1945, the plaintiff made charges on its books regularly at the rate in question and that regular monthly statements showing such charges were sent by the plaintiff to the defendants who, it seems, never challenged them.  See *Winchester* v. *Glazier,* 152 Mass. 316, 325; *Harris* v. *Carter,* 147 Mass. 313, 315; *Bradley* v. *Brigham,* 137 Mass. 545, 547.

We pass now to the other contention of the defendants, namely, that even if the compensation to be paid in connection with the loans was agreed to, it was nothing more than interest and that under G. L. (Ter. Ed.) c. 107, § 3, the plaintiff cannot recover interest at a greater rate than six per cent per annum because the agreement to pay it was not in writing.[1]  (We assume in favor of the defendants that the agreement was not in writing.)  The difficulty with this contention is that it does not appear from the findings that the charges in question were exacted solely as interest on the money lent.  In one part of his report the master referred to these charges as "interest charges, service charges, and cash disbursements."  Elsewhere they are called "compensation."  In other parts of the report they are referred to as "interest charges."  The trial judge evidently took the view that they were service charges, for they are designated as such in the final decree.  Considering all the findings of the master, although they are not as clear on this matter as they might be, we are of opinion that the compensation charged included service charges as well as interest.

[1] General Laws (Ter. Ed.) c. 107, § 3, provides that, with exceptions not here material, no greater rate of interest than six per cent "shall be recovered in a suit unless the agreement to pay it is in writing."  See *Nelson* v. *Beal,* 278 Mass. 130; *Foley* v. *Flaherty,* 278 Mass. 134.

Loan agreements may, and frequently do, provide for the rendition of services by the lender for which separate charges in addition to interest are made. Charges of this sort may be recovered for services actually rendered unless they are merely a cloak for concealing a charge not permitted by law. *Stevens* v. *Davis*, 3 Met. 211, 212. *Kimball* v. *Proprietors of the Boston Athenaeum*, 3 Gray, 225, 230. *Workingmen's Loan Association* v. *United States*, 142 Fed. (2d) 359, 361 (C. C. A. 1). Restatement: Contracts, § 533. See annotations in 21 A. L. R. 797, 871, et seq., and 105 A. L. R. 795. Since there is nothing in the master's report which would indicate what portion of the charges in question was for interest and what was for services, it cannot be ruled that the plaintiff is recovering interest at a rate exceeding that permitted by G. L. (Ter. Ed.) c. 107, § 3.

2. The judge erred, however, in allowing the plaintiff to recover the balance of the bonus which the partnership had agreed to pay it for the so called Sears Roebuck loan. The facts found by the master concerning this are as follows: In September, 1943, the partners "negotiated a trust receipt loan from the plaintiff . . . in the sum of approximately $80,000, for the purpose of financing a sale of certain merchandise to Sears, Roebuck & Co., agreeing to pay to the plaintiff a special bonus of $10,000 therefor, in addition to the regular interest charges of the plaintiff." (We infer that this agreement was not in writing, and no contention is made to the contrary.) The plaintiff was paid $3,600, and although it "fully consummated its part of this trust receipt transaction . . . the balance of said commission, namely, $6,400," has never been paid.

We are of opinion that these findings establish that the bonus was compensation for a loan, and nothing more, and that the entire balance claimed exceeds the amount which can be recovered under G. L. (Ter. Ed.) c. 107, § 3, since the agreement to pay it was not in writing. We think that this aspect of the case falls within the authority of *Foley* v. *Flaherty*, 278 Mass. 134, where we said at page 137, "A bonus not agreed upon in writing may be recovered in appropriate circumstances . . . but calling mere compensa-

tion for loan or forbearance of money a bonus does not avoid the requirements of G. L. c. 107, § 3."

3. The defendants challenge the finding of the master with respect to legal fees. In the agreements relative to the accounts receivable and trust receipts it was provided that, in the event that it became necessary for the plaintiff to resort to legal proceedings to collect the sums owed, it was entitled to a reasonable attorney's fee. The only finding of the master touching this was as follows: "In so far as the same is a question of fact or a mixed question of fact and law, I find that a fair charge for legal services incurred by the plaintiff in connection with this suit to be the sum of $5,000." What was a fair and reasonable charge for legal services was primarily a question of fact involving a consideration of the many elements discussed in *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 and *McLaughlin* v. *Old Colony Trust Co.* 313 Mass. 329, 335. In several recent cases we have stated that a master owes a duty to the parties, when making ultimate findings upon vital points, to find and report the subsidiary facts upon which they are based and to state that they are so based. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 436. *Kahn* v. *Pacific Mills*, 311 Mass. 588, 589–590. *Minot* v. *Minot*, 319 Mass. 253, 258. It would have been better if the master here had found the subsidiary facts on which he based his ultimate finding. But the evidence is not reported and we cannot say that the finding of the master was erroneous. If we assume as the defendants assert in their brief (although it does not appear in the record) that they made a motion to have the report recommitted for further findings on this issue, and that the motion was denied, it would not help them. Such a motion is addressed to the discretion of the judge whose action on it seldom can be revised on appeal. *Minot* v. *Minot*, 319 Mass. 253, 258, and cases cited.

The defendants objected to the finding under consideration and sought to obtain, without success, a brief, accurate and fair summary of the testimony, presumably for the purpose of raising the question whether the evidence was

sufficient in law to support it. See Rule 90 of the Superior Court (1932). But they were not entitled to such a summary. Under the second paragraph of Rule 90, in the absence, as here, of a special order of the court, the defendants were entitled to a summary only if the evidence was taken by a stenographer selected or approved by the master before any evidence was introduced, and if the objecting party shall have furnished the master with a transcript of the material portions of it. *John A. Frye Shoe Co.* v. *Williams,* 312 Mass. 656, 667. *Bouchard* v. *Bouchard,* 313 Mass. 531, 533–534. *Buckley* v. *John,* 314 Mass. 719, 724. The record fails to disclose that these requirements of the rule were complied with. Since no error with respect to this finding appears on the face of the report, the exception to it must be overruled. *Cappy's, Inc.* v. *Dorgan,* 313 Mass. 170, 173. *Carroll* v. *Hinchley,* 316 Mass. 724, 728.

4. The defendant Genstil Fabric Corporation argues that it ought not to have been held liable to the plaintiff. The findings relevant to this issue are as follows: On November 10, 1943, the partnership consisting of Fred Theise, 2d, Russell Theise and Genstil was dissolved. At that time the partnership was indebted to the plaintiff in the amount of $45,882.12, which was secured by collateral worth about $84,000. At the time of the dissolution of the partnership, Genstil acquired the interests of the Theises in the partnership and agreed to assume all of its liabilities, and save the Theises harmless with respect to the same. At the same time the plaintiff released the Theises from any liability to it arising out of the transactions with the partnership. On November 17, 1943 (seven days after the dissolution of the partnership), Genstil organized the Genstil Fabric Corporation (hereinafter called the corporation). Genstil was its president and treasurer and also a director. Of its one hundred shares of stock he owned ninety-six. At the time the corporation was formed, Genstil, with the knowledge and consent of the plaintiff, transferred to the corporation all of the assets formerly owned by the partnership, including all interest in the collateral then pledged to the plaintiff. Shortly after the corporation was formed, and

thereafter, the plaintiff carried the account (which had hitherto been in the name of the partnership) in the name of the corporation. The records of the plaintiff concerning the account "were at all reasonable times open and available to . . . Genstil." The monthly statements respecting the account were regularly sent to the corporation after it was formed.

In support of its contention the corporation argues that it is a separate and distinct legal entity from Genstil and was not in existence at the time of the dissolution of the partnership, and that no agreement by Genstil to assume the obligations of the partnership was binding on it. Nor, it is argued, is there any finding by the master that it had agreed to assume the liabilities of the partnership. We are of opinion that the findings do not go far enough to show an assumption of the obligations of the partnership or of Genstil by the corporation, and that the decree ought not to have established any indebtedness on its part to the plaintiff.

The interlocutory decrees are affirmed. The final decree is to be modified by striking out the words "and Genstil Fabric Corporation" and the word "defendants" wherever it appears and substituting therefor the word "defendant," and by striking out so much of the decree as orders the payment of the sum of $6,400 and interest thereon in the amount of $548.27. The decree is to be further modified by striking out that part of it which reserves to the court "the right to enter a decree hereafter recalculating the service charge and the amounts of interest." Such a provision in a final decree is improper. The decree should definitely settle the rights of the parties as of the date it is entered and leave nothing for future determination. Otherwise it is not a final decree. "No decree is a final one, which leaves anything open to be decided by the court, and does not determine the whole case." *Forbes* v. *Tuckerman*, 115 Mass. 115, 119. To the same effect are *Gerrish* v. *Black*, 109 Mass. 474, 477, and *Johnson's Case*, 242 Mass. 489, 494. In the case last cited it was said at page 494, "A final decree in equity must state in plain figures the amount which a party

must pay in the way both of debt or damages and costs, as well as every other matter adjudicated." We are not to be understood as intimating that the plaintiff is not entitled to have the interest brought down to date in the final decree after rescript. See *Boston* v. *Dolan,* 298 Mass. 346, 352. Every decree for the payment of money bears interest from the date of its entry and a provision in a final decree making interest run after its entry is unnecessary. G. L. (Ter. Ed.) c. 235, § 8. *Boyer* v. *Bowles,* 316 Mass. 90, 95. The decree under consideration, however, did more than merely provide for bringing interest down to date; it provided that service charges might be recalculated at some future date. As modified in the respects indicated above the final decree is affirmed with costs.

*So ordered.*