Coven, J.
Upon the jury’s verdict in this summary process action, judgment was entered for the landlord, plaintiff Wood Mill, LLC (‘Wood Mill”), against its tenant, defendant The Psychological Center, Inc. (the “Center”), for possession.[1] The Center has appealed, alleging that the trial judge erred: (1) in instructing the jury that the Center had the burden of proof as to the terms of an oral modification of a written lease; (2) in removing a juror; and (3) in denying its motion for a directed verdict at the conclusion of Wood Mill’s case-in-chief and again at the close of all the evidence.
In October of 2003, Wood Mill purchased the premises and received the seller’s assignment of a five-year written lease by the Center, which was dated February 5, 2002. Monthly rent under the lease was $9,521.00.
Soon after Wood Mill acquired the property, the Center approached it to discuss the Center’s financial difficulties, resulting from a decline in federal funds, and its inability to meet its rent obligation. As stipulated by the parties at trial, the parties agreed that the Center would be permitted to defer one-half of its monthly rent obligation for the months December, 2003 through June, 2004. This agreement was not in writing. The Center continued, however, to defer one-half of its rent for an additional two months; that is, through August, 2004.
By letter dated November 8, 2004, Wood Mill’s controller served the Center with “notice of pending default under the lease due to The Psychological Center’s failure to remit payments on overdue rent.” While the letter acknowledged the parties’ agreement to permit the Center’s deferral of rent, Wood Mill’s controller noted that such deferral had “expired at the end of June 2004,” that the Center had continued deferral during July and August, 2004, and that “[tjhis brings the total amount of deferred rent due and payable immediately to $42,844.50.” The letter concluded by requesting that the rent arrearage issue be addressed “as soon as possible,” and stated that “ [i]f a full payment cannot be made promptly, then perhaps we could work out a plan.”
Three months later, by letter dated February 10, 2005, Wood Mill’s attorney informed the Center that, as a result of its neglect to pay the rent due, the lease was terminated. The letter referred to the earlier November 8, 2004 letter to the Center by Wood Mill’s controller as its notice of the Center’s default, and further advised the Center that “any and all payments received subsequent to this Notice [of termination] will be accepted for use and occupancy of the Premises ... and *89 shall not be construed as acceptance of a new tenancy.” Article VII, §7.1, of the lease provided that “[i]f a default by [the Center] continues after written notice thereof from [Wood Mill] to [the Center] for more than 10 days in the case of the payment of rent... [Wood Mill] may... mail notice of the termination” of the lease to the Center.
Wood Mill’s summary process complaint was filed on February 28, 2005. The Center tendered the rent withheld for the months of July and August, 2004 on April 15,2005.
1. Burden of proof. The trial judge instructed the jury that “the Psychological Center, alleging there was a modification to the lease Agreement with respect to the rent obligation, bears the burden of proving the specific terms of the modification.” We agree with the Center that a landlord who seeks to evict a tenant for nonpayment of rent has the initial burden of proving that a rental payment was due and the tenant failed to make the required payment. Commonwealth Investment Co. v. Fellsway Motor Mart, 294 Mass. 306, 313 (1936). But this case is not, as argued by the Center, “remarkably similar” to, or governed by, Commonwealth Investment Co. While the parties acknowledged in that case that the tenant’s rent obligation had been orally modified, there was disagreement as to the terms of that modification. Conversely, the parties stipulated in this case as to the terms of the oral modification of the Center’s rent obligation; namely, that one-half of the rent otherwise due each month from December 2003 through June of 2004 would be deferred. Wood Mill denied any further modification. Contrary to the Center’s contention, the judge’s instruction did not improperly shift from Wood Mill the burden of proving the specific terms of the oral modification. Instead, the parties’ stipulation itself satisfied Wood Mill’s burden on the issue of the Center’s rent obligation and its nonpayment.
Having stipulated to the period of the rent deferral, the Center then bore the burden of proving its claim that the oral modification was itself further modified to include July and August, 2004. The burden of proof is on the tenant to establish defenses it presents to the landlord’s claim for unpaid rent. See Fairview Auditorium Corp. v. Fairview Auditorium Club, 331 Mass. 594, 596 (1954) (in action for rent, tenant’s burden to prove illegality in lease); Anapolle v. Carver, 327 Mass. 344, 346 (1951) (tenant’s burden on issue of surrender); Bandera v. Donohue, 326 Mass. 563, 565 (1950) (in action for rent, tenant’s burden to prove abandonment and surrender); Tracy v. Long, 295 Mass. 201, 203 (1936) (in action for rent, tenant’s burden to prove of constructive eviction); Stavert v. Alden, 2000 Mass. App. Div. 181, 182 (tenant’s burden on issues of surrender and acceptance). Wood Mill denied the Center’s claim that a subsequent oral modification was reached, and it was not Wood Mill’s burden to disprove the Center’s claim.
2. Juror Discharge. Prior to the second day of trial, it was brought to the judge’s attention that a seated juror had an issue concerning her own familiarity with a witness. The juror was brought into the judge’s conference room, where counsel for both parties were present. Although the meeting was not recorded, the parties agreed that the juror informed the court that she realized that a principal of Wood Mill was a friend of the family for whom she provided nanny services. Asked about her ability to remain impartial, the juror stated that her knowledge that the identified witness was a friend of her employer’s would not affect her impartiality. The juror then further indicated that based on the evidence then introduced, she would favor the Center over Wood Mill.[2]
Counsel for both parties discussed the juror’s statements with their clients. When the case was back on the record, the Center contended that the specific *90 relationship disclosed by the juror did not warrant her removal. Wood Mill argued that any form of relationship would affect a juror’s impartiality. The trial judge, noting that six jurors would remain if the particular juror was discharged, removed the juror.
The decision to discharge a juror is entrusted to the sound discretion of the trial judge. G.L.c. 234A, §39 (‘The court shall have discretionary authority to dismiss a juror at any time in the best interests of justice”). We find no abuse of that discretion. This is not a case where a juror merely called to the attention of the court a tangential familiarity with a witness. Further, the juror juxtaposed a declaration of her impartiality with a statement as to which party she already favored based upon the evidence presented up to that point. In assessing the credibility of a juror who declares an ability to adjudicate a claim impartially, a trial judge may consider a juror’s statement that contradicts such an assertion and, on that basis, make a determination that discharge is warranted “in the best interest of justice.”
Moreover, even if we were to determine that the trial judge was in error in discharging the juror, we nonetheless would conclude that the Center failed to demonstrate that it was prejudiced by the juror’s discharge. See G.L.c. 234A, §74 (that verdict shall not be set aside based on irregularity in excusing juror under G.L.c. 234A unless objecting party has been prejudiced thereby). While the Center’s general contention that each juror brings some contribution to the deliberative process is correct, both the Center and Wood Mill were entitled to impartial deliberations and an impartial adjudication. Nothing in the record before us would support any inference that the Center did not receive such an adjudication. Section 74 of G.L.c. 234A does not establish a presumption of prejudice in the deliberative process arising from the removal per se of a juror prior to deliberation. The statutory burden of proof placed upon the Center to demonstrate actual prejudice would be unnecessary if the removal of a juror prior to deliberations was itself prima facie evidence of prejudice. The Center has advanced no evidence of actual prejudice.
3. Directed verdict. The Center contends that it was entitled to a directed verdict because Wood Mill’s November 8, 2004 letter did not serve as a proper notice of default as required by the terms of the lease.[3] Specifically, the Center contends that because the November 8, 2004 letter included an invitation to work out a payment plan, Wood Mill could not have considered the Center in default on that date, and that the letter thus failed to provide clear notice to the Center of its default. We note that Wood Mill’s use of the term “pending’ default in the November 8,2004 also supports the Center’s argument. However, the Center’s motion for a directed verdict could not have been properly restricted to this one issue. Both the standard for the motion, and the evidence before the trial court, was much broader. A motion for a directed verdict must be denied if, “‘anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.’” Martignetti v. Haigh-Farr, Inc., 425 Mass. 294, 304 (1997), quoting Forlano v. Hughes, 393 Mass. 502, 504 (1984). In applying this standard, the evidence must be viewed in the light most favorable to the plaintiff. Id.
Whatever arguments can be made regarding the November 8, 2004, letter, *91 there can be no doubt that the Center received notice of default in the form of the February 10, 2005 letter from Wood Mill’s counsel. Once this written notice was tendered as required by the lease, the Center had ten days to cure its default. Nothing in the lease required Wood Mill to inform the Center of its right to cure. The right to cure was stated clearly in the lease and, presumably, the Center was aware of the lease provision. No argument has been advanced that the Center could not have cured the default after the February 10, 2005 letter was received, or that it could not have raised its cure, had one been made, as a defense in response to the February letter.
Judgment affirmed.
So ordered.

A separate action has been filed in the Superior Court involving, in part, the issue of damages. The parties agreed that the summary process action would be tried solely on the issue of possession.

 The record does not indicate what evidence had been introduced at the time the juror disclosed knowledge of a witness.

 Pursuant to G.L.c. 186, §11A, a commercial landlord may terminate a written lease for the commercial tenant’s nonpayment of rent either “(i) in accordance with the provisions of the lease or (ii) in the absence of such lease provisions, by at least fourteen days notice to quit, given in writing to the tenant.” G.L.c. 186, §11A. In the absence of any lease provision concerning default for nonpayment, §11A allows a tenant to cure by making full payment “before the day the answer is due in any action... to recover possession.”