Imper Realty Corp. *vs.* R. R. Riss, Sr., & another.

Suffolk.  November 5, 1970. — December 30, 1970.

Present: Tauro, C.J., Spalding, Kirk, Reardon, & Quirico, JJ.

*Contract,* What constitutes, Performance and breach, Contract for sale
of real estate.  *Evidence,* Extrinsic affecting writing.  *Tender.  Words,*
"Clear title as agreed."

An agreement for sale and purchase of registered real estate comprised
not only a letter to the prospective purchaser from the sellers stating
that it set forth "in full the terms of our agreement," although it did
not mention title, and a subsequent letter from the sellers confirming
the prior "agreement" and adding that a "deposit [made] would be
refundable only if . . . [they] failed to deliver clear title as agreed,"
but also a Land Court plan, the duplicate certificate of title, a copy
of the deed to the sellers, the proposed deed by them, and a telegram
and various conversations and letters; and in the circumstances con-
sideration of all the component parts of the agreement as such and
for the purpose of determining what was meant by the ambiguous
phrase "clear title as agreed" was not precluded by the parol evidence
rule.  [534–535]
In an action by the prospective purchaser under an agreement for sale
and purchase of registered real estate calling for a deed conveying

"clear title as agreed," to recover a deposit and damages for alleged breach from the defendant sellers, evidence of the negotiations between the parties, experienced businessmen, and their counsel, required conclusions that when the parties made the agreement they had in mind four sewer easements on the property and intended to transfer the title thereto as shown on a Land Court plan which disclosed the easements, and on the duplicate certificate of title, which indicated that the property was subject to the easements, and where it appeared that at the closing the defendants tendered a deed in proper form except for the omission of one of the sewer easements, and that solely because thereof the plaintiff refused to complete the purchase, it was held that in the circumstances the omission from the deed did not constitute such a defect in title as to warrant the plaintiff's rejection of the tender, and that the plaintiff was not entitled to recover the deposit or damages. [535–536]

CONTRACT. Writ in the Superior Court dated October 27, 1966.

The action was heard by *Mitchell, J.*

*Stuart DeBard* for the defendants.

*Herbert Burstein* (*Reuben Landau* with him) for the plaintiff.

KIRK, J. This is an action in contract in which the plaintiff seeks to recover a deposit of $25,000 made with the defendants in connection with the purchase of a certain parcel of real property. The plaintiff also seeks damages in the amount of $250,000 for breach of contract to convey title to the property. In an earlier case, *Riss* v. *Imper Realty Corp.* 355 Mass. 793, this court affirmed the dismissal of a bill in equity by the defendants requesting an injunction against prosecution of this action.

The plaintiff's declaration contains three counts: the first is to recover the $25,000 deposit; the second alleges a purchase and sale agreement and that the defendants "did not complete the sale"; and the third is to recover damages for an alleged breach of the purchase and sale agreement by failing to furnish a "clear" title. The defendants' answer was a general denial. The case was tried before a judge of the Superior Court, sitting without a jury, who found for the plaintiff on counts 1 and 3 and assessed damages at $25,000 on each of those counts. He found for the defendants on count 2. The case is before us on bills of exceptions of both

the plaintiff and the defendants. Essentially, the exceptions relate only to the applicability of the parol evidence rule. There are no findings of fact.

The material evidence is as follows: The defendants, doing business as copartners under the name of R & L Investment Co., owned land situated in the Allston district of the city of Boston. In 1951 and 1952 a predecessor constructed a large truck terminal on the land and obtained permission from the city of Boston to construct a building over two sewers for which the city acquired and maintained two sewer easements. Permission was also secured from the Metropolitan District Commission to construct the building over a third sewer owned by the commission which constituted an additional easement over the land. A water conduit was relocated around the easterly edge of the property by the city of Boston which acquired a fourth sewer easement. There is no evidence that these sewer easements ever interfered with the operations of the terminal.

In January, 1966, Arthur E. Imperatore, acting for the plaintiff corporation, of which he was a principal officer, purchased a truck terminal in Philadelphia from the defendants. At that time Imperatore and Riss, Sr., one of the defendants, discussed the possibility that the plaintiff might purchase other truck terminals owned by the defendants.

About June 6, 1966, Imperatore visited Riss in Colorado Springs and stayed at his home. Riss, Imperatore and Jack B. Carter, general manager of the defendants' partnership, discussed for over half a day a proposed sale of the Allston truck terminal. A Land Court plan of the terminal was examined by the parties and was given to Imperatore by Riss. This plan clearly shows by pairs of solid lines the following: (1) a "City of Boston Sewer Easement 6 ft. wide"; (2) another "City of Boston Sewer Easement 6 ft. wide"; (3) a "Metropolitan District Commission Sewer Easement" labeled as thirty feet wide; and (4) a "Boston Sewer Easement" with the figures "10" and "8."

On the same day, a Massachusetts Land Court duplicate certificate of title covering the property was shown to

Imperatore. This document certified that the defendants were the owners in fee simple of the property subject to an easement to the Metropolitan Sewerage Commission dated September 10, 1890, and to three Boston sewer easements dated November 23, 1891, August 7, 1905, and April 16, 1952.

About a week later, around June 16, Imperatore and his stepson, Arthur Pohan, returned to Colorado Springs and again there was discussion of the terms of the proposed sale including an examination by them of the Land Court plan showing the sewer easements.

At one of the two meetings in Colorado Springs, Imperatore said, "Those easements could be dangerous." Riss replied, "Well, I've been running 65,000 pound trucks over them for fourteen years. They haven't been dangerous and haven't cost us a nickel." Riss further told Imperatore that if he wanted the property he would have to accept it as it was.

Between June 9 and June 16, Riss and Imperatore had a number of telephone conversations. On June 22, 1966, the plaintiff offered in writing to purchase the property and accompanied its offer with a check in the sum of $25,000. On June 24, the defendants returned the check with a letter stating that "all prior negotiations are erased, so if you have any further interest in Boston or the other deal, we can start negotiations with a clean slate."

Riss testified that he returned the check because the plaintiff's written offer contained matter which he had not agreed to. Subsequently, Riss told Imperatore he had two other offers for the property at the price of $750,000 and that Imperatore would have to wire $25,000 that day if he wished to buy it. Imperatore did so and Riss wired him on June 28: "Check has arrived. You have bought the property."

On July 6, the defendants wrote a letter to the plaintiff purporting to set forth "in full the terms of our agreement for the purchase by" the plaintiff of the property. The letter made no mention of the title to be conveyed, nor did it mention the easements. Subsequently, by a letter dated

July 22, 1966, the defendants confirmed the prior "agreement" and said "that the $25,000. deposit would be refundable only if . . . [they] failed to deliver clear title *as agreed*" (emphasis supplied). Also enclosed with this letter was a copy of the proposed deed which revealed the 1890, 1891 and 1905 easement. The 1952 easement was not specified.

At all times material to this dispute, counsel for the plaintiff were Mr. Herbert Burstein of New York and Mr. Reuben Landau of Boston. About July 5 or 6, either Mr. Landau or Mr. Burstein told counsel for the defendants, Mr. Joseph J. Mulhern of Boston, that someone in the office of another Boston law firm was going to New York that day and requested that he bring to their office an abstract and a plan of the property to be transferred. The abstract was a photostat of a deed from the prior grantor to the defendants. The plan was the Land Court plan previously referred to revealing all four easements. Mr. Burstein acknowledged receipt of these documents on July 6.

There was evidence that throughout these negotiations Pohan and Carter also had numerous conversations. In one of them, Pohan said he had visited the terminal and brought up the subject of manholes in the building. They generally discussed the sewers and Carter said they were on the plans that everyone had looked at, had been there for a great many years and caused no trouble. There was also testimony by the defendants' counsel concerning numerous conversations with Mr. Landau in which the easements were discussed and at no time was there any dispute until the parties met for the closing on October 4. The defendants then tendered the deed and other closing documents. The plaintiff refused to complete the sale because the 1952 Boston sewer easement was omitted from the deed. There was no concern over the other easements. There was no demand for a return of the deposit. There was no request to amend the draft deed to include the fourth easement.

The parties separated, Mr. Burstein saying that he would think over the matter and inform the defendants' counsel of

his decision. Counsel for the defendants did not hear from Mr. Burstein and on October 12 the defendants wrote to the plaintiff that the deposit was forfeited.

The plaintiff now asserts that the defendants failed to deliver "clear title" because the property was encumbered by easements, that the plaintiff is entitled to the return of its deposit and that it is entitled to damages for breach of the contract to convey clear title. In support of these assertions, it argues that the total agreement between the parties was contained in the letter of July 6, 1966, as explained by the letter of July 22, 1966, and that any evidence concerning the easements contradicts this "agreement" to convey "clear title" and should have been excluded under the parol evidence rule. In addition to the letters of July 6 and July 22 we think the Land Court plan, the duplicate certificate of title, the copy of the prior deed, the prepared deed, the telegram and various conversations and letters composed the agreement.

The letter of July 22, upon which the plaintiff places crucial reliance to prove that the defendants promised to convey "clear title" plainly shows the necessity of resorting to other documents and conversations to disclose the intent of the parties. That letter states "that the $25,000. deposit would be refundable only if . . . [the defendants] failed to deliver clear title *as agreed*" (emphasis supplied). The letter of July 6 purporting to set forth "in full the terms of our agreement" does not mention whether the title to be conveyed would be subject to the easements. In fact there is no mention of title whatsoever. In order to determine the exact intent of the parties in contracting for "clear title as agreed" we must look to other sources.

The view we take does not violate the parol evidence rule for two reasons. First, the parol evidence rule applies only where a writing clearly expresses the entire transaction entered into between the parties. *Glackin* v. *Bennett*, 226 Mass. 316. *Regina Grape Prod. Co.* v. *Supreme Wine Co. Inc.* 357 Mass. 631, 634. The "agreement" here cannot be confined to one complete and final statement of the trans-

action. There is no sole point of reference with respect to the subject matter of the contract. Secondly, it is well settled that evidence of prior statements, documents, conduct and even prior agreements can be offered in aid of interpreting an ambiguous writing and is not prohibited by the parol evidence rule. *Stoops* v. *Smith*, 100 Mass. 63. *Levin* v. *Century Indem. Co.* 279 Mass. 256. *Gainsboro* v. *Shaffer*, 339 Mass. 1. In the present circumstances, the phrase "clear title" is modified by the phrase "as agreed." The phrases considered together are sufficiently ambiguous to warrant recourse to other statements, documents and conduct between the parties.

There is ample evidence that the parties knew about and discussed the easements on numerous occasions. The Land Court plan and the duplicate certificate of title clearly show the existence of the easements. These documents were examined by Imperatore prior to the letters of July 6 and July 22. The plaintiff's counsel acknowledged receipt of the plan on July 6. On two occasions prior to July 6, Imperatore questioned Riss about the easements. A draft deed revealing three of the easements was mailed to the plaintiff on July 27. The plaintiff never objected to the easements until the meeting for closing on October 4 and then only because the 1952 easement was omitted from the proposed deed. There is no document purporting to convey a title free of encumbrances. This point distinguishes the case from *Siegel* v. *Shaw*, 337 Mass. 170. Considering all the circumstances, we think that the parties fully intended to transfer the Land Court title as shown on the plan and by the duplicate certificate of title and that the contract was made with the easements in mind.

The omission of the 1952 easement in the proposed deed did not vitiate the tender. As we have already said, the agreement was to convey the Land Court title which listed all four of the easements. Generally, a tendered deed must convey title in accordance with the requirements of the agreement. *Siegel* v. *Shaw*, 337 Mass. 170, 172. This rule is designed to insure the delivery of as good title as was

contracted for. In the present case, the easement omitted in the deed did not affect the title as contemplated by the parties. The omission did not serve to retain any property or rights for the defendants. The conveyance did not involve a transfer of title *with* easements but rather *subject to* them. The deed, in the circumstances, could only serve to give the plaintiff additional notice of the easement. Had the plaintiff requested it, the deed could easily have been amended to include it. In the circumstances, the omission did not constitute such a defect in title as to warrant rejection of an otherwise proper tender. The plaintiff was bound to perform the contract at the time set for the closing. In failing to do so, it must forfeit its deposit.

The result we reach is not unduly harsh. Both parties are experienced businessmen, knowledgeable in negotiating transactions such as this. They had dealt with each other previously. They had dickered and negotiated with one another concerning various terms of the agreement in an attempt to "out-bargain" each other. Both were fully apprised of the complete terms of the agreement. Both had competent counsel. The result must be

*Plaintiff's exceptions overruled.*
*Defendants' exceptions sustained.*
*Judgment for the defendants.*