361 Mass. 809                                    809

Bridgewater Washed Sand & Stone Co. Inc. *v.* Bridgewater Materials, Inc.

BRIDGEWATER WASHED SAND & STONE CO., INC. *vs.*
BRIDGEWATER MATERIALS, INC. & another.[1]

Norfolk.   March 10, 1972. – May 15, 1972.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, & HENNESSEY, JJ.

*Evidence,* Extrinsic affecting writing. *Sale,* Contract of sale. *Frauds, Statute of.*

Written original and supplementary land sale contracts involving a
sand and gravel plant and stockpiles of materials located both on
the plant site and on land to be retained by the seller were not
so thoroughly integrated and free from ambiguity, nor so incon-
sistent with an additional oral agreement providing that the seller
could use materials from the stockpiles so long as they were re-
placed by the time title passed, that admission of evidence of the
oral agreement violated the parol evidence rule. [812–813]
An oral agreement that a seller of a sand and gravel plant could, in
the usual course of business, use stockpiles of materials located
both on the plant site and on land to be retained by the seller so
long as they were replaced prior to the time title passed did not
constitute a contract of sale of the materials and the statute of
frauds found in G. L. c. 106, § 2–201, as appearing in St. 1957,
c. 765, § 1, did not apply to make the agreement unenforceable.
[813–815]

CONTRACT OR TORT.   Writ in the Superior Court dated
April 25, 1966.

A motion to recommit to an auditor and a motion for
judgment were heard by *Tomasello, J.*

*James D. St. Clair* for the defendants.
*Harold Rosewald* for the plaintiff.

CUTTER, J.   The plaintiff (the buyer) seeks to recover
from the corporate defendant (Materials) the value of
stockpiled sand and gravel or stone removed from three
parcels of land sold (except for part of one parcel on
which there was an asphalt plant) by Materials to Ger-
ald I. Bern or his nominee.   The buyer became Bern's
nominee.   An agreement of purchase and sale (the orig-

---

[1] Louis P. Lorusso.

inal agreement) was executed on May 24, 1965.[2]   A supplementary agreement, dated June 21, 1965, defined by metes and bounds the land to be excepted from the conveyance (the excepted parcel) and created certain easements in favor of the buyer as to the excepted parcel. Lorusso, Materials' president and treasurer (fn. 1), signed each agreement individually as well as for Materials.   An auditor, who made findings described below, assessed damages, recoverable by the buyer, at $50,150. Subject to the defendants' exceptions, a Superior Court judge denied their motion to recommit the auditor's report, and allowed a motion for judgment for the buyer on the auditor's report.   The case is before us on the defendants' bills of exceptions.

The land sold consisted of about seventy acres in Bridgewater.   The excepted parcel contained about 6.2 acres.   The original agreement (par. 2) provided that the "sale . . . shall include the sand and gravel plant . . . on the [sold] premises, all equipment listed . . . and processed and unprocessed sand and gravel."   It further provided (par. 3), after referring to the excepted parcel, "Any sand and gravel removed from *this area* at any time after passing of papers, and any sand, gravel *or stone* stockpiled in this area at the time of passing of papers shall be the property of the [b]uyer, and the [b]uyer shall have the right to enter the area to remove it for a reasonable . . . time" (emphasis supplied).   The supplementary agreement of June 21, 1965 (probably executed on June 22), made a similar provision, in terms clearly applicable to the excepted parcel.[3]   Materials and Lorusso apparently as-

---

[2] The auditor referred in various places to this date as May 21, but it was agreed at the arguments that the correct date was May 24.   In quoting the auditor's report, this correction has been made.

[3] The supplementary agreement provided (par. 5) "that the purchase price was allocated by the parties as follows: $100,000 for the land; $70,000 for the building; and $10,000 for the stockpiles."   The auditor found that these allocations were not "an expression of the accurate value of . . . [the] inventory . . . or . . . stockpiles but" represented figures "insisted upon by . . . [Materials and Lorusso] for tax purposes."

361 Mass. 809                                          811

Bridgewater Washed Sand & Stone Co. Inc. *v.* Bridgewater Materials, Inc.

sume that papers passed on June 22, 1965, although this is by no means wholly clear from the auditor's report.

The parties stipulated before the auditor that the original agreement and the supplementary agreement "constitute the *written* agreements between the parties." From oral testimony of "witnesses for . . . the plaintiff [the buyer] and the defendants [i.e. Materials and Lorusso] . . . attorneys and . . . accountants who drew both . . . agreements," the auditor found that the written agreements "did not constitute the *entire* agreement." He admitted parol evidence "to determine the oral agreement and to explain some of the language and the terms used."

The auditor found that "stockpiles or inventory were to become the property of the . . . buyer" when title to the real estate passed, "including not only those stockpiles or inventory . . . on the land that was sold but also including the stockpiles or inventory . . . on the" excepted parcel. The buyer "was to have . . . [a] right . . . after title passed to enter upon" the excepted land and remove the stockpiles as his own property. The auditor also found that on May 24, 1965, "there were . . . certain stockpiles of sand and stones on the land in question . . . examined together by" the original purchaser Bern and by Lorusso for the seller (Materials); "that for the period between May 24, 1965," and the passage of title, "it was agreed that the business of . . . [Materials] should continue . . . as usual; [and] that . . . [Materials] could use the stockpiles . . . in the usual course of business but would . . . replace . . . the same with like quantity" so that "when papers should pass the quantity . . . would be as close as possible" to that on May 24.

By June 22, "the stockpiles of stones" were not up to the quantity seen and examined by representatives of the parties about May 24. Materials had sold and removed quantities from the stockpiles of stone, which the auditor concluded amounted (a) to a breach of Ma-

812                                                      361 Mass. 809

Bridgewater Washed Sand & Stone Co. Inc. v. Bridgewater Materials, Inc.

terials' agreement to deliver the same quantity of stone [4] present on May 24, and (b) to a conversion.

The auditor made findings concerning the quantity of the stone removed between May 24 (see fn. 2) and June 22, and its value. He found for the buyer in the aggregate sum of $50,150 on count 1 (breach of contract against Materials) and count 2 (breach of contract against Lorusso [5]). He found for Lorusso on count 4 alleging conversion of the stone. A motion for judgment in accordance with the auditor's report was allowed.

1. Materials and Lorusso contend that the oral contract, on the terms found by the auditor, was inconsistent with the written contracts and that admission of evidence concerning it constituted a violation of the parol evidence rule. There, of course, would have been such a violation if the oral agreement in fact had been inconsistent with the written agreements. *Schuster* v. *Baskin*, 354 Mass. 137, 140–141. *Gifford* v. *Gifford*, 354 Mass. 247, 249. Restatement 2d: Contracts (Tent. draft no. 5, March 31, 1970) §§ 239–242.

The original and supplementary agreements are somewhat ambiguous concerning the date as of which the stockpiles were to be sold and consequently concerning the right of Materials to use or remove materials from the stockpiles prior to passing papers. Uncertainty concerning the meaning of the written contracts is created in several respects: (a) An express provision of the original agreement (par. 7) gave to Materials, the seller, the right to remove the loam from one parcel. No similar written provision was made concerning the removal of stone. Uncertainty thus was created whether the seller was entitled to remove stone prior to passing papers.

---

[4] The auditor concluded that there had been no breach of the agreement "insofar as sand . . . [was] concerned." He also concluded that Lorusso did not "personally participate in . . . tortious conduct of" Materials.

[5] A Superior Court judge ordered that the auditor's findings against Materials on count 3 for conversion be struck from his report.

(b) Because the buyer would not own the excepted parcel on which at least some of the stockpiles stood, there was a reason (wholly consistent with the asserted oral agreement) for providing in the original agreement that "stone stockpiled . . . [on the excepted parcel] *at the time of passing of papers* shall be the property of the [b]uyer" (emphasis supplied). The supplementary agreement was generally similar in form. The buyer obviously needed to have access to those stockpiles on another's land. The provision thus is not necessarily inconsistent with a separate oral agreement that Materials might use, in the course of its business, and replace stone from the stockpiles prior to the passing of papers.

(c) The written agreements appear to be somewhat loosely drawn. They use the terms "sand and gravel," "sand, gravel or stone," and "sand and gravel stone" in a confusing manner. The briefs of the parties refer to various engineering authorities and texts which show considerable flexibility in the meaning of the term "gravel."

The written agreements were sufficiently ambiguous to require explanation. We cannot say (especially without the evidence received by the auditor which is not before us) that the oral agreement, found to exist by the auditor, was inconsistent with the written agreements, or that the written agreements were so thoroughly integrated and free from ambiguity as to preclude the receipt of parol evidence. See *Carlo Bianchi & Co. Inc.* v. *Builders' Equip. & Supplies Co.* 347 Mass. 636, 643–644. See also *Imper Realty Corp.* v. *Riss,* 358 Mass. 529, 534–535.

We perceive no basis for the contention of Materials that the oral agreement was superseded by the supplementary agreement dated June 21. We regard the oral agreement as relating to a collateral matter not covered by either the original agreement or the supplementary agreement. See *New England Factors, Inc.* v. *Genstil,* 322 Mass. 36, 40.

2. Materials contends that the oral agreement violates

the statute of frauds found in G. L. c. 106, § 2–201 [6] (as appearing in St. 1957, c. 765, § 1). The buyer's declaration alleges that Materials received the full consideration from the buyer. Although the auditor does not expressly find this to be so, his report implies the payment of the whole purchase price of $180,000. Accordingly, if the whole agreement (written and oral) required transfer of the stone stockpiles as they existed on May 24, 1965, and if they (as the auditor found) were not transferred, the provisions of § 2–201 (3) (c) are satisfied by the payment of the whole consideration.

In any event, it is far from clear that there was any separate oral agreement for the *sale* of stone. The auditor, in effect, has found that the oral agreement was on the basis that, "in the usual course of business," Materials "could *use* the stockpiles" but would "*replace* or restore*," them (emphasis supplied). This necessarily presupposes that the original written agreement, as explained by parol evidence, provided for the sale of all the stockpiles as they existed on May 24. If this was the case, then the oral agreement was merely that Materials would replace the portions of the stockpiles consumed by it, as a matter of business routine, prior to passing papers. Such a replacement provision concerning fungible goods hardly can be said to constitute a contract of sale.

In view of his finding about the arbitrary nature of the allocation of the price "for tax purposes" (fn. 3), the auditor did not have to give controlling significance to

---

[9] Section 2-201 reads in part: "(1) Except as otherwise provided in this section a contract for the sale of goods for the price of . . . [$500] or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . . A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing. . . . (3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable . . . (c) with respect to goods *for which payment has been made and accepted* or which have been received and accepted" (emphasis supplied).

361 Mass. 809                                                                        815

Bridgewater Washed Sand & Stone Co. Inc. *v.* Bridgewater Materials, Inc.

the allocation provision of the supplementary agreement. What has already been said (in part 1 of this opinion) about the ambiguity of the written agreements justified the auditor's receipt of oral testimony to explain what stockpiles were sold (i.e. whether only those on the excepted parcel or also those on the land sold). Since the record does not contain the evidence before him, we are not able to say he wrongly concluded that all stockpiles (both those on the excepted parcel and those "on the land that was sold") were the subject of sale.[7]

3. Lorusso contends that judgment should not have been entered against him for the stone removed or withheld by Materials between May 24 and the passing of papers. In the original agreement (stated to be between Materials and Bern, who assigned his interest to his nominee, the ultimate buyer), only the original seller and the original buyer made any express promises to each other. Lorusso, as Materials' president and treasurer, warranted that he had no knowledge[8] of any problem concerning the legal right to remove gravel from the premises. In the supplementary agreement (expressed as only between Materials and the ultimate buyer), Lorusso (by par. 4) joined in an agreement by Materials (a) not to build a concrete plant on the excepted parcel without the ultimate buyer's consent and (b) to obtain from any lessee or purchaser of the excepted parcel an agreement to buy from the buyer "sand and gravel stone" used in the asphalt plant on the excepted parcel. The agreement bound Lorusso (as well as Materials) to this provision. Lorusso signed (without stating any express limitation on his contractual liability) not only the original agreement but

---

[7] The defendants' motion to recommit the auditor's report for further findings was denied. The record does not suggest (a) that further findings were necessary to determine whether Materials was liable to the buyer for the deficiences in the stone stockpiles, or (b) that the auditor's findings, in fact made, were based upon any "erroneous opinion of law." See G. L. c. 221, § 56.

[8] The auditor found that Lorusso did know of withdrawals from the stockpiles.

also the supplementary agreement. It is left uncertain whether or to what extent the written agreements or the oral agreement bound him beyond the representations and covenants specifically made by him as stated above. The auditor found that there was "no evidence whether . . . [Lorusso] controlled" Materials.

The auditor has not found subsidiary facts sufficient to permit an intelligent decision whether Lorusso was bound as surety or guarantor or was bound only by his specific undertakings, inasmuch as to most other provisions of the written agreements he could be found to have been acting as an agent or representative for a disclosed principal. Lorusso relies, in this aspect of the case, on *Blackmer* v. *Davis*, 128 Mass. 538, 541–542 (distinguished in *Zussman* v. *Goldberg*, 254 Mass. 486, 487–488). See *Porshin* v. *Snider*, 349 Mass. 653, 654–655; *Henry B. Byors & Sons, Inc.* v. *Water Commrs. of Northborough*, 358 Mass. 354, 362.

The question of the extent of Lorusso's liability was obscurely (but, we think, sufficiently) raised by the defendants' motion to recommit to the auditor (see fn. 7), and also by the buyer's motion for judgment on the auditor's report. Further findings only on this issue (of the extent of Lorusso's personal liability) remain appropriate. These further findings may be made by the trial judge or by recommittal of this question to the auditor.

4. Lorusso's exception to the allowance of the motion for judgment is sustained, and his other exceptions are overruled. Issues concerning the extent of his liability are to be heard further in the Superior Court. Materials' exceptions are overruled and judgment in favor of the buyer is to enter against Materials on the auditor's report.

*So ordered.*