GERARD P. ANTONELLIS & others, trustees, *vs.*
NORTHGATE CONSTRUCTION CORP.

Middlesex.    November 15, 1972. — January 19, 1973.

Present: TAURO, C.J., REARDON, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Contract,* What constitutes, Condition precedent. *Evidence,* Extrinsic affecting writing.

In a contract action, the question whether there was an integration of oral agreements into a written contract for sale of fill by the plaintiff to the defendant depended upon the intention of the parties on which proof could be received ranging beyond the writing proper; the evidence supported a conclusion that certain oral negotiations were not integrated into the final written contract of one page; and even if there was an integration excluding an effective agreement outside the writing, nevertheless, evidence could be received and used to elucidate the meaning of a paragraph of the contract which provided that the contract was subject to the contingency of the defendant obtaining a certain "job" with a city, and to show that such paragraph was intended to embrace not only a situation in which the defendant failed to secure the "job" but also the situation in which the defendant could not perform the "job" because of the quality of the fill obtained from the plaintiffs. [849–851]

CONTRACT.    Writ in the Superior Court dated December 15, 1966.

The action was heard by *Cahill,* J.

The case was submitted on briefs.

*Nathan S. Paven* for the plaintiffs.

*George W. Gold* for the defendant.

KAPLAN, J.    The plaintiffs' declaration (the claim) sought damages for the defendant's alleged breach of contract in failing to remove fill from the plaintiffs' gravel

pit and to pay for it as agreed. The defendant answered, alleging that the execution of the contract sued on was based upon an agreement that the contract was to terminate if the fill did not meet the quality requirements of the city of Brockton, that the fill was rejected by the city, and that accordingly the defendant did not stand in breach.[1] Filed with the answer was the defendant's declaration "in counterclaim and set-off" for the return of the amount of its deposit under the contract (the counterclaim) ; to this the plaintiffs responded with denials. Upon trial without a jury, the judge found for the defendant on both the claim and the counterclaim. The plaintiffs excepted to the judge's allowing a certain question during the cross-examination of one of their witnesses, and also to the judge's denial of their motion for a new trial on the claim and the counterclaim, and these rulings are made the basis of the plaintiffs' bill of exceptions.

On August 15, 1966, the plaintiffs, as sellers, and the defendant, as buyer, executed a one-page agreement, entitled "Contract Terms," prepared by and on the letterhead of a broker, for the purchase and sale of 150,000 yards of fill at twenty cents a yard, the fill to be removed by the buyer from the plaintiffs' pit at Easton, Massachusetts. There was provision that the buyer was in certain events to pay the wages of a checker; that the removal was under the sellers' permit and removal by other contractors was not to be allowed for a period of four months after operations under the agreement had begun; that the buyer was to deposit $5,000, from which the sellers were to pay $1,500 to the named broker (with a pro rata refund by the broker if less than 125,000 yards of fill was purchased by the buyer) ; that the buyer was to pay the broker $2,000 within sixty days after removal began; and that, after the sellers had used up the balance of the deposit by reimbursing themselves for the first fill taken, they were to bill the buyer bi-weekly for further

---

[1] A defence based on alleged fraud of the plaintiffs need not be pursued here.

fill. The concluding paragraph 6 of the agreement read: "This contract is contingent upon the . . . [buyer] obtaining the Contract from the City of Brockton or their agents for this job."

It appears that the defendant took about 21,000 yards of fill from September 16 to October 21, 1966. The city of Brockton rejected the fill as unsuited to the particular job of preparing a site for a high school, the rejection being shown by a letter of September 30 from the Brockton clerk of works to the defendant. Thereafter the defendant declined to take any additional fill from the plaintiffs, and pointed to the agreement for termination above mentioned.

The plaintiffs contended that there was no such agreement; they also intimated that such an agreement could not in any event be given effect in the face of the written contract of August 15, that is to say, the contingency paragraph of the contract of August 15 so far "integrated" its subject matter as to exclude by reference to the parol evidence rule the recognition of an agreement regarding acceptability of the fill to the Brockton authorities.

The parties have addressed themselves to these issues on the merits, and we do also, although, as will be seen below, there is much doubt whether they are properly presented for review.

1. Whether there was an integration as the plaintiffs contended was a question of the intention of the parties on which proof could be received ranging beyond the writing proper. *Carlo Bianchi & Co. Inc.* v. *Builders' Equip. & Supplies Co.* 347 Mass. 636, 643. Corbin, Contracts, §§ 573, 582, 588. The plaintiffs themselves called witnesses who testified about discussions between the parties before the writing was executed. One of the plaintiffs, Antonellis, testified that it was only after the defendant stopped digging that the defendant's president informed him that the fill had to be approved by the Brockton city engineer. The plaintiffs, however, then went on to call the defendant's president, Paino; he

testified that he had asked one Cicione, a representative of the broker, to find gravel for the defendant for the job in Brockton; that he met with Antonellis and Cicione and said that the fill would be for a specific municipal job in Brockton and had to meet certain specifications of the city, and if the fill met those specifications and the defendant obtained the particular Brockton job, the defendant would be willing to buy the fill.[2]   Cicione, also called by the plaintiffs, corroborated Paino's testimony in substance, adding that Antonellis had said, "there would be no trouble at all if they [Brockton] couldn't accept it."

The record does not contain any specific evaluation of this evidence by the judge, but we think that, considered on the preliminary issue of integration, see *Caputo* v. *Continental Constr. Corp.* 340 Mass. 15, 17–18; Restatement 2d: Contacts (Tent. draft No. 5, March 31, 1970) § 235 (2) and comment c, § 236 (3) and comments b and c, the evidence could justify a negative conclusion favoring the defendant; especially so, in view of the brevity of the writing and the evident design to mesh this agreement with the Brockton job.   The same evidence could then readily support a further conclusion that the parties had in fact agreed that the buyer's obligation to take fill from the plaintiffs would end if Brockton rejected it as unsuitable.   Cf. Restatement 2d: Contracts, *supra*, § 235, comment c.   The conclusion of nonintegration is quite plausible even if acceptance of the fill by Brockton is viewed as a contingency or condition added to (and consistent with) that of "obtaining" the Brockton contract as expressed in paragraph 6.   See *Hicks* v. *Bush*, 10 N. Y. 2d 488, 492–493.[3]   Considered

---

[2] Paino also testified that the contract with the city of Brockton gave the defendant a choice between using free fill furnished by the city of Brockton subject to charges for hauling, and obtaining it elsewhere.

[3] On the question of integration, it does not make an important difference whether acceptance of the fill by Brockton is seen as a condition of the formation of any contract between the plaintiffs and the defendant, or (as we think the more reasonable interpretation) a condition of performance by the defendant under a formed contract.   See Corbin, Contracts, § 589 (note the treatment at pp. 546–547 of *Tilo Roofing Co. Inc.* v. *Pellerin*, 331 Mass. 743).

from a different angle, the agreement about the suitability of the fill for the Brockton job may be thought of as a specification of the quality of the fill that the defendant was contracting to take from the plaintiffs, rather than as a contingency or condition. The writing omitted mention of specifications despite the fact that the fill was destined for a construction project, and the judge could well find that the parties did not intend to exclude an oral agreement upon that subject. See *Caputo* v. *Continental Constr. Corp., supra,* at 18; Wigmore, Evidence (3d ed.) § 2430, at pp. 98–99.

But if it were held that there was an integration excluding an effective agreement outside the writing, the judge's decision on the claim could still be supported. Paragraph 6 is not self-interpreting — no form of words is — and the evidence could be received and used to elucidate its meaning in context. *Robert Indus. Inc.* v. *Spence, ante* 751, 753. *Imper Realty Corp.* v. *Riss,* 358 Mass. 529, 535. *Bridgewater Washed Sand & Stone Co. Inc.* v. *Bridgewater Materials, Inc.* 361 Mass. 809, 813. Corbin, Contracts, § 579. Restatement 2d: Contracts, *supra,* § 238. It could be found that paragraph 6 was intended to embrace not only a situation in which the defendant failed to secure the contract with Brockton but one in which that contract could not be satisfied with the plaintiffs' fill. This interpretation puts no impossible strain on the words used and comports with the dominating purpose of the transaction, see *Smith* v. *Vose & Sons Piano Co.* 194 Mass. 193, or so the judge could rationally decide.

2. It requires some charity toward the plaintiffs to assume that the substantial issues centering on the parol evidence rule are here for review. The plaintiffs excepted to the denial of their motion for a new trial on the claim, the motion having assigned as reasons that the finding on the claim was against the evidence, the weight of the evidence, and the law; but in these circumstances the motion seems misused. *Scano, petitioner,* 338 Mass. 7, 9. *Gamer* v. *Milton,* 346 Mass. 617,

621. Upon a jury-waived trial such issues are ordinarily preserved for review by the seasonable filing with the trial judge of proper requests for rulings of law. *La-Foley* v. *Ferbas,* 335 Mass. 769. *Ashapa* v. *Reed,* 280 Mass. 514, 515–516. *Baker* v. *Davis,* 299 Mass. 345, 348. The plaintiffs objected to a question during the cross-examination of Cicione,[4] and noted their exception to its admission. This may have been intended to invite a ruling, in effect, that the plaintiffs had succeeded on the preliminary issue of integration; but the least that can be said is that the point was not made clearly.

3. The finding for the defendant on the counterclaim was attacked by the new-trial motion as being against the law, but, passing the procedural difficulty, there was no basis for questioning that finding if the plaintiff failed on the claim. Thus the defendant is entitled to a return of the deposit of $5,000, which it paid in, but subject to the deduction of any charges that may be appropriate, such as charges found appropriate for the fill actually taken by the defendant. The record does not indicate whether such charges were analyzed nor does the finding mention any amount due. Perhaps this determination was left open until the time for entry of judgment.

The present exceptions are overruled. Within sixty days of the date of the rescript, either party may apply to the Superior Court for determination of the amount that may be owing on the counterclaim. Judgment shall be entered after this determination, subject to any fresh exceptions.

*So ordered.*

---

[4] The question inquired about the conversation between Antonellis and Paino in which Paino specified that if the material was not acceptable to the Brockton engineer the deal would have to be "cancelled."