Agnes, Peter W., J.

INTRODUCTION

This breach of contract claim is brought by Plaintiff Empire Business Brokers of Massachusetts (“Empire”), against ASC Family, Inc. (“ASC”) and John Minasidis (“Minasidis”). Empire alleges that the defendants breached their respective contracts, and seeks its brokerage fee. The defendant Minasidis has filed motions for summary judgment against both Empire and ASC.

FACTUAL BACKGROUND

The essential facts are notin dispute. On March 19, 2003, ASC entered into a brokerage agreement (“Brokerage Agreement”) with Empire, which authorized Empire to act as broker for the sale of Stash’s Grille (Stash’s), a restaurant owned by ASC. ASC granted Empire the exclusive right to sell Stash’s for a period of nine months. Pursuant to the agreement, if Stash’s was sold during the exclusive period ASC agreed to pay Empire a brokerage fee of $9,500, or 8% of the sale price, whichever was greater. The contract stated that Empire would be entitled to the brokerage fee whether or not Empire was involved in or responsible for its sale.
On September 8, 2003, Minasidis entered into a Non-Disclosure and Confidentiality Agreement (the “Confidentiality Agreement”) with Empire, and in exchange, Empire provided Minasidis information about various businesses that were for sale. Stash’s was one of those businesses. The Confidentiality Agreement states:
If the Buyer discloses the availability of a business to another party and that party purchases or causes the purchase of that business without Broker, or if Buyer interferes with the Broker’s right to compensation from the Seller in any manner, then Buyer agrees to be responsible for payment of Broker’s commission as outlined on the listing agreement for that business.
In November 2003, Minasidis decided to buy Stash’s directly from ASC and not through the broker. ASC and Minasidis entered into a Purchase and Sale Agreement (“P&S Agreement”). Neither defendant informed Empire that they were conducting a sale. Part of the P&S Agreement states:
Buyer has not incurred or become liable for any broker’s commission or finder’s fee relating to or in connection with the transactions contemplated by this Agreement, in the event of any claim by a third party that a broker’s commission or finder’s fee is owed by the Buyer, Buyer shall have the sole obligation to pay such finder’s fee.
This sale occurred within the exclusive period, yet Empire did not receive a broker’s fee from ASC. ASC claims that it did not owe Empire a broker’s fee because it terminated the Brokerage Agreement with Empire in August 2003, one month prior to the sale of Stash’s. As a result, Empire brought this action against ASC to recover its brokerage fee from ASC under the Brokerage Agreement. Empire also joined Minasidis as a party defendant under the Confidentiality Agreement and seeks to recover its brokerage fee. ASC, in turn, filed a claim against Minasidis because it believed that the P&S Agreement required him to pay the broker’s fee.
DISCUSSION

A. Summary Judgment Standard of Review

Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’ r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991). All evidence must be viewed in the light most favorable to the non-moving party. Williams v. Hartman, 413 Mass. 398, 401 (1992).

B. Empire’s Claim Against Minasidis

Empire alleges that the terms of the Confidentiality Agreement require Minasidis to pay the brokerage fee because he “interfere[d] with the Broker’s right to compensation from the Seller . . .” The interpretation of a written contract is a question of law. Lumber Mut. Ins. Co. v. Zoltek Corp., 419 Mass. 704, 707 (1995). No form of words is “self-interpreting.” Antoneilis v. Northgate Construction Company, 362 Mass. 847, 851 (1973). The court, thus, is required to determine what the parties meant by the use of the term “interfere.”
Empire argues that because Minasidis did not inform Empire that it was consummating the sale directly with ASC, Minasidis had interfered with its right to collect its brokerage fee. Minasidis argues that “interfere” means forecloses Empire’s abilify to recover its brokerage fee, and because Empire still has a valid claim in court against ASC, Minasidis has not interfered with that right. Minasidis proffers two affirmative acts in which he could have extinguished this right, neither of which is supported by the facts: (1) if Minasidis urged ASC to cancel the contract early; or (2) Minasidis urged ASC to wait until after the exclusive period to consummate the sale.
*639 The meaning of a term used in a contract is usually determined by reference to its common meaning, as reflected in dictionary definitions, unless the parties have expressed an intent that a different point of reference should be used. Town of Boylston v. Comm’r of Revenue, 434 Mass. 398, 405 (2001). Accord, Great American Life Ins. Co. v. Murphy, 647 F.Sup. 119, 122 (D.Mass. 1986); Colman v. School Committee of Swanses, 6 Mass.App.Ct. 912, 912 (1978). Webster’s Dictionary defines “interfere” as “to come in collision or be in opposition; to enter into or to take part in the concerns of others; to act reciprocally so as to augment, diminish or affect one another; to impose in a way that hinders or impedes; to enter or take part in the concerns of others.” Webster’s 7th Collegiate Dictionary 441 (1971); Webster’s 10th Collegiate Dictionary 609 (2001). The court agrees that the scenarios proffered that the defendant fall within the definition of “interfere,” but the facts contained in the record before the court do not support a finding that Minasidis engaged in such conduct. Minasidis was not under an affirmative obligation to inform Empire of his efforts to buy Stash’s directly from ASC either under the terms of the Confidentiality Agreement or any other provision of Law. Minasidis’s failure to inform did not constitute interference. [1]
C. ASC’s Claim Against Minasidis
ASC claims that the portion of the P&S Agreement reprinted above requires Minasidis to pay a brokerage fee to Empire. The clause in question reads, “in the event of any claim by a third party that a broker’s commission or finder’s fee is owed by the Buyer, Buyer shall have the sole obligation to pay such finder’s fee.” Under ASC’s interpretation, a buyer would be required to indemnify ASC for ASC’s obligations to pay its own brokerage fees. The plain language of the agreement, however, does not support the view that it is an agreement for indemnification. This clause purports to protect ASC from paying the brokerage fees of the buyer Minasidis has not entered into a brokerage agreement. The only brokerage agreement in this case is between Empire and ASC.

ORDER

For the foregoing reasons, the defendant’s (Minasidis) motion for summary judgment against Empire and ASC is ALLOWED.

Interference may not always require proof of an affirmative act. For example, if the Confidentiality Agreement created a duty for Minasidis to inform Empire of his intention to buy property of which Empire was a broker, failure to act would be considered interference. This is not the case here.